**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| SESAME WORKSHOP, | |
| Petitioner, | Case No.: 6:23-cv-01507-PGB-EJK |
| v. | **RESPONDENT'S CROSS-MOTION TO VACATE AND RESPONSE IN OPPOSITION TO SESAME WORKSHOP'S PETITION TO CONFIRM ARBITRATION AWARD** |
| SEAWORLD PARKS & ENTERTAINMENT, INC., | |
| Respondent. | |

Respondent SeaWorld Parks & Entertainment, Inc. ("SeaWorld") respectfully submits this cross-motion to vacate, pursuant to Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), and response in opposition to the petition of Sesame Workshop ("Sesame") to confirm (Dkt. No. 1), the May 22, 2023 arbitration award by a tribunal of three arbitrators (the "Tribunal") from Judicial Arbitration and Mediation Services ("JAMS").[1]

## PRELIMINARY STATEMENT

The arbitration award here—which conferred on Sesame a contractual windfall contrary to the well documented intent of the parties—is that rare award that is so egregiously improper that it must be vacated by this Court. The dispute

---

[1] SeaWorld will submit the declaration of Sarmad M. Khojasteh ("Khojasteh Decl."). To afford the parties an opportunity to meet-and-confer concerning the sealing of competitively sensitive information, SeaWorld is filing a redacted copy of its cross-motion and refraining from publicly filing the Khojasteh Declaration. Capitalized terms not defined herein have the meanings ascribed to them in Sesame Workshop's petition.

concerned the impact of government-imposed shutdowns resulting from the COVID-19 pandemic on the proper royalty calculation under a license agreement. The award here, if confirmed, would unjustifiably and unjustly enable Sesame to reap a massive profit from that shutdown at SeaWorld's expense.

The Tribunal was called upon to interpret a royalty calculation provision of a License Agreement between the parties, under which SeaWorld licenses Sesame's intellectual property for use at Sesame-branded amusement parks (each, a "Sesame Place") owned and operated by SeaWorld. ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████

In 2020, government-imposed shutdowns resulting from the COVID-19 pandemic forced Sesame Langhorne to close for all of April, May, and June, and most of July, gutting its peak operating season ██████████████

████████████████████████. ███████

████████████████████████████████████

████████████████████████████████████

███████████████████████████

In the arbitration, in contravention of New York law, the Tribunal adopted an erroneous and commercially unreasonable interpretation of the provision resulting in an enormous windfall to Sesame, contrary to New York law.[2]  *See Reape v. New York News, Inc.,* 122 A.D.2d 29, 30 (2d Dep't 1986) ("[W]here a particular interpretation would lead to an absurd result, the courts can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties.").

Although SeaWorld had already paid Sesame ███████████████, the Tribunal awarded an additional ██████ to Sesame ████████████████████████████████████████ The Tribunal, on the ground that the License Agreement was unambiguous, decided that SeaWorld owed for 2021 in excess of ██ ███████████████████████████████████████ This Award is egregiously wrong and should be vacated and not confirmed for three reasons.

*First,* the Award must be vacated because the Tribunal "exceeded their powers," FAA § 10(a)(4), by exercising jurisdiction over a dispute that was not ripe for arbitration. ████████████████████████████████

████████████████████████████████

████████████████████████████████

—————————————————

█ ████████████████████████████████████████



. By nonetheless exercising jurisdiction over the arbitration, the Tribunal, without any legal basis, nullified the ███████████████—an essential agreed-to provision ████████████████ ███████████████████████████████████████. The Tribunal therefore lacked a valid basis to exercise jurisdiction over the dispute.

*Second*, the Award must be vacated because the Tribunal "refus[ed] to hear evidence pertinent and material to the controversy," FAA § 10(a)(3), including evidence of the parties' intent, on the erroneous ground that Section 10.02(b) was unambiguous, and "exceeded their powers," FAA § 10(a)(4), by ignoring the only on-point New York law presented to it, which it was obligated to follow, and instead impermissibly made up its own law on the issue. In *F & M Precise Metals, Inc. v. Goodman*, 8 Misc. 3d 1028(A), 2005 WL 1993493 (Sup. Ct. Nassau Cty. 2005), plaintiff licensor gave defendant licensee "the exclusive right and license to use" plaintiff's proprietary artwork. *Id.* at *1. Pursuant to the agreement, the licensee was obligated to pay a guaranteed minimum royalty to the licensor "[d]uring each

calendar year during the Term of [the] Agreement." *Id.*  The one-year term of the agreement commenced on July 1, 2002, and the court had to determine whether the licensor was entitled to two guaranteed minimum royalty payments because the term extended across two separate calendar years.  The licensor argued that the agreement was unambiguous and two separate payments, one for <u>each</u> calendar year during which the agreement was in effect.  *Id.*  The licensee argued that the contract was necessarily ambiguous as to the period or periods during which the licensor was entitled to a guaranteed minimum royalty payment, because even though it referred to "each calendar year during the term of this Agreement," it didn't specify whether a term less than a total calendar year would require a separate payment.  *Id.*

In denying plaintiff's summary judgment motion, the court explained that "in deciding whether an agreement is ambiguous, courts should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed."  *Id.* at *2 (citations omitted).  In finding the agreement ambiguous, the court credited testimony from the licensee that the licensor's interpretation was "illogical" insofar as the licensee "would not have obligated itself to pay for two years of royalties for a one-year agreement," and that the licensor—before commencing the lawsuit—had sought a guaranteed minimum royalty payment for a single year.  *Id* at *3.  The court concluded that "the inescapable conclusion is that this contract is ambiguous with regard to the period or periods during which [the licensor] is entitled to a guaranteed minimum royalty" and "[e]xtrinsic evidence is needed to establish the intention of the parties."  *Id.*

As in *F & M*, ███████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ ████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████ There can be no

doubt that the position adopted by the Tribunal is at least as "illogical" as

interpreting the contract in *F & M* to award the licensor two separate guaranteed

minimum royalty payments for a one-year contract. ████████████████

████████████████████ ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

Additionally, the Award must be vacated because the Tribunal refused to

permit SeaWorld to cross-examine Sesame witnesses concerning █████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ By refusing to permit SeaWorld to question

Sesame witnesses about ████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████the Tribunal unfairly and inexcusably "refus[ed] to hear

evidence pertinent and material to the controversy" and denied SeaWorld the right

to a fair hearing.

*Third*, the Award must be vacated because the Tribunal "refus[ed] to hear

evidence pertinent and material to the controversy," FAA § 10(a)(3), by excluding

purportedly privileged evidence pertinent and material to the testimony of its general counsel, thereby permitting Sesame to impermissibly wield the privilege as a sword and shield.  The Tribunal permitted Sesame to call its general counsel, Joseph Salvo, to testify on topics concerning the interpretation of Section 10.02(b). At the same time the Tribunal allowed Sesame to withhold an unknown number of Salvo's documents on those same topics and to redact certain of Salvo's documents it chose to produce, thereby depriving SeaWorld of the opportunity to meaningfully confront the general counsel's self-serving testimony.  The Tribunal went so far as to refuse to require Sesame to produce a privilege or redaction log.  By permitting Sesame to use its general counsel as a sword at the hearing, without any ability to impeach his testimony, the Tribunal undermined the integrity of the arbitration and deprived SeaWorld of a fundamentally fair hearing.

Accordingly, the petition should be denied, and the arbitration award vacated.

## FACTUAL BACKGROUND

### A.    SeaWorld Owns and Operates the Park For 40 Years

SeaWorld is a leading entertainment company which owns and operates amusement parks, including two standalone Sesame-themed amusement parks located in Langhorne, Pennsylvania and Chula Vista, California.  For 40 years, SeaWorld has owned and operated Sesame Langhorne.

**B.** ██████████████████████████████████████████████

In 2016, SeaWorld and Sesame entered into negotiations to extend their licensing relationship, ███████████████████████ Ex. A 84:7-17.[3]  The evidence in the arbitration—including testimony from SeaWorld's CEO, Marc Swanson, and Sesame's CEO, Steven Youngwood—established that ███████████ █████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████

**C.     The Parties Enter into the License Agreement**

SeaWorld and Sesame entered into the License Agreement on May 16, 2017. Ex. E. ██████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████

---

[3] References to "Ex. __" refer to exhibits to the Khojasteh Decl..



Ex. E at §10.02(d); Ex. B 357:3-12 , 585:15-586:2.

1.

Ex. B 383:10-25 .

Youngwood explained that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. Ex. B 384:3-25.  On cross-

examination, though, Youngwood made up facts that are not in the record, and

provisions that are not in the License Agreement: "████████████████████

████████████████████████████████████" Ex. B 393:14-

17 ." However, no License Agreement provision directs the parties to "████████

████████████. In fact, Sesame's interpretation of Section 10.02(b) – ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

In stark contrast Sesame's Position in this arbitration, Sesame did not insist on

a commercially unreasonable position—rather it agreed to a commercially

reasonable solution, *i.e.*, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████.

## D.    The Park's Revenues Were Decimated in the 2020 COVID Year

The COVID-19 pandemic pummeled Sesame Langhorne's operations in 2020.

Notwithstanding Sesame's absurd attempt  to minimize the pandemic's impact as

merely causing a delay in Sesame Langhorne's reopening (Ex. A 119:17-19 ) the

evidence – namely, testimony from Langhorne Park President, Cathy Valeriano—

established that the Park was forced to close for almost all of its peak operating

season, ██████████████████████████████. Ex. C 802:7-14 , 812:10-19; Ex.

F; Ex. A 119:17-120:1.  As a result, Sesame Langhorne's 2020 attendance and

revenues were devastated. Ex. C 808:3-23; Ex. F. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████ (Ex. G, Ex. H). ███████████████████████████

███████████████████████ Ex. I

**E.      The Parties Acknowledge** ████████████████████████

The evidence in the arbitration established that, █████████████████

██████████████████████████████████. For SeaWorld,

it was apparent that the ██████████████████ would not function as intended

██████████████████████. It was apparent to Sesame as well: David Albano,

Sesame's Vice President of Finance, stated in an email to Sesame executives: "██

████████████████████████████████████████████

██████████████████████████████████" Ex.

J.  The parties' extensive discussions on this issue, detailed below – which

████████████████████████████████████████

██████████████████—highlight precisely why the Court should vacate the

Award.  Ex. K. ████████████████████████████████████

███████████████████ Ex. K; Ex. B 588:23-589:3.  As Swanson testified,

Swanson explained that "████████████████████████████████



████████████████████████████████████████" (Ex. C 769:16-24 ).

Swanson testified further that, ████████████████████████████████

████████████████████████████████████████████

███████████████. Ex. B 582:24-583:9.

████████████████████████████████

████████████████████████████████████████

███████████████████████████████████. █████

███████████████████████████████

████████████████████████████████

████████████████████████████████████████

███████. Exs. L, K, I, H, D.

Swanson explained that "████████████████████████

████████████████████" Ex. B 605:18-606:5. ████████████████

████████████████████████████████████ (Ex. B

517:16-518:10), ██████████████████████████████

████████████████████████████████████████

████████████████ ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

13

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

**F.**   **Sesame's About-Face in Demanding a** ████████████████████████

The evidence at the arbitration established that, even as it acknowledged ████

██████████████████████████████████████████ Sesame seized

upon the pandemic  to try to line its pockets.  █████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

But Sesame saw an opportunity to turn SeaWorld's pain to its advantage.

Though SeaWorld was fighting through an existential crisis triggered by the

shut down of all of its parks, Sesame—which had actually benefitted during the

pandemic from children's increased reliance on television programming—was

strategizing about how it could exploit the crisis to extract concessions from

SeaWorld.  As Sesame's CFO stated in an email, █████████████████████████

████████████████████████████████████████ Ex. N.

██████████████████████████████████████████████

████████████████████████████ *Id.*  Ultimately, Sesame's decision to

leverage the crisis derailed the █████████████████████████████████

██████████████████████████████████. ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ . Ex. K; Ex. C 705:2-15 , 718:9-17 .

**G.     SeaWorld Pays Sesame a Royalty of Approximately** ███████████████

In January 2022, SeaWorld paid Sesame a royalty of approximately ████

███████████████████████████████████████████

████████████████████████████ Ex. B 360:16-23.  That rate

was consistent with the parties' intent in entering the License Agreement and ████

████████████████████████████████ . Ex. H.

**H.     The Arbitration**

████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████ . Ex. O; Ex. I. On March 7, 2022,

█████████████████████████████████████████

███████████ . Ex. P; Ex. E § 17.01(a). ████████████████

█████████████████████████████████████████

████████████ Ex. Q. ████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

*Id.*; Ex. E § 17.01.

█████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████ *Id.* ████████████



Ex. R.

**1.** ████████████████████████████████

On September 19, 2022, ████████████████████████

████████████████████████████ Ex. Q. ████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████" Ex. T.

**2.     The Tribunal Fails to Require Sesame to Produce a Privilege Log**

The parties exchanged document productions on November 30, 2022. On December 6, SeaWorld attempted to coordinate the simultaneous exchange of privilege and redaction logs with Sesame.  Sesame refused to produce any type of privilege log even though Sesame had identified its Salvo as a potential hearing witness. SeaWorld raised this issue to the Tribunal on Ex. U.  On December 14,

2022, the Tribunal denied SeaWorld's request as untimely because Sesame, on

November 3, 2022, had disclosed that its general counsel might be called as a

witness. *Id*.  Though the parties document production was not complete until

November 30, 2022, the Tribunal's decision did not provide an explanation as to

why SeaWorld's request was untimely or why should be denied the right to assess,

evaluate, and, if necessary, challenge the merits of Sesame's privilege assertions.

    **3.**    **The Tribunal Permits Sesame to Call Its General Counsel as Witness**

    Following depositions and in the lead-up to the final hearing on March 7-9,

2023 (the "Hearing"), SeaWorld and Sesame exchanged Pre-Hearing Disclosure of

Witnesses and Exhibits on February 21, 2023. Sesame disclosed that Salvo—who

actively participated in the arbitration and attended all depositions and conferences

with the Tribunal—would testify concerning, ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████ Ex. V at 1-2.

    On March 2, 2023, SeaWorld raised the issue of Salvo's testimony to the

Tribunal and requested that the Tribunal (i) require Sesame to produce all Salvo's

custodial documents and communications that it withheld (including any

contemporaneous notes from the License Agreement negotiations) and remove the

redactions from the few Salvo custodial documents it did produce, or (ii) preclude

Salvo from testifying at the Hearing.  The next day, the Tribunal took SeaWorld's

request for the production of Salvo's contemporaneous notes regarding his conversations with SeaWorld under advisement until the Hearing and otherwise denied SeaWorld's request. Ex. W.

### 4. The Tribunal Permits Sesame General Counsel to Testify on Privileged Subject Matter During Direct Examination

At the outset of the Hearing, SeaWorld again objected to Salvo's improper testimony. SeaWorld's counsel noted that Sesame withheld an untold number of documents on purported privilege grounds and refused to provide a privilege log. Ex. A 63:1-15.  SeaWorld's counsel further noted that if the examination went into potentially privileged material or the parties' intent or conversations, SeaWorld should be able to probe those areas based on a complete evidentiary record.  *Id.*  The Tribunal failed to address SeaWorld's objection. *Id.*

From virtually the beginning of Salvo's direct examination, his testimony implicated privileged subject matter.  For example, Salvo was permitted to testify regarding Sesame's response to communications from SeaWorld on the negotiation and drafting history of Section 10.02(b), which plainly information over which Sesame claimed privilege and withheld or redacted documents. Ex. A 88:5-17 . Additionally, Salvo testified concerning Sesame's purported interpretations of the provision in dispute.  ████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ Because

Sesame was not required to produce Salvo's internal communications regarding the

negotiations—██████████████████████████████████████

████████████████████████████████████—SeaWorld

SeaWorld was unable to test or challenge the veracity of Salvo's testimony.

SeaWorld objected to this line of questioning, arguing that Sesame was allowing

Salvo to testify as to subject matter over which Sesame claimed privilege and

withheld documents. Ex. A 108:15-114:14; 115:7-16.  The Tribunal overruled

SeaWorld's objections. *Id.*

5.     **The Tribunal Prevents Cross-Examination of Sesame's CEO Concerning the ███████████████████████**

Similarly, the Tribunal prevented SeaWorld from meaningfully cross-

examining Youngwood, regarding ███████████████████████

████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

*See* Ex. B 390:10-24; 391:16-21.

### 6.      The Award

On May 22, 2023, the Tribunal issued the Award to Sesame in the amount of $9,689,055, plus pre-judgment interest and $151,151.58 for Arbitration fees, finding that SeaWorld breached the License Agreement.

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

████████████████████████████████

███████████████████████████████████████





On June 5, 2023, the Award became final pursuant to Rule 24(k) of JAMS Comprehensive Arbitration Rules and Procedures.

## ARGUMENT

## I.   STANDARD OF REVIEW

Although they are afforded deference, arbitration awards are hardly impervious to judicial review.  A party may file a motion to vacate, modify, or correct in order to re-arbitrate before a different arbitrator, reduce or increase the amount of the award, or fix an evident mistake in the award.  *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1238 (11th Cir. 2021).

Section 10 of the FAA permits vacatur of an arbitration award "where the arbitrators exceeded their powers" or "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3)-(4). An arbitration award must be vacated if a party is denied their right to "fundamental fairness" in the arbitration – *i.e.*, denied a

full and fair opportunity to present its case.  *See, e.g.*, *Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007).

## II.   THE TRIBUNAL LACKED JURISDICTION OVER THE DISPUTE

The Award should be vacated because the Tribunal "exceed[ed] their powers" by exercising jurisdiction even though ███████████████████████████ ███████████████████████████████████████████████ █████████████████████████ 9 U.S.C. § 10(a)(4). "Where contracting parties condition an arbitration agreement upon the satisfaction of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration." *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003); *Kemiron Atlantic, Inc. v. Aguakem Int. Inc*, 290 F.3d 1287, 1289 (11th Cir. 2002) ("[T]he parties agreed to conditions precedent before arbitration can take place and, by placing those conditions in the contract, the parties clearly intended to make arbitration a dispute resolution mechanism of last resort.").

████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

███████████████████████████████



Notwithstanding this factual record, the Tribunal issued Procedural Order No. 2, denying SeaWorld's application to stay the arbitration and finding that

███████████████████████████████████████████ and thus found "███████████████████████████ ██████████████████" This ruling was contrary to well-settled New York law that disfavors strict enforcement of contract notice provisions where the party against whom the claim is made both admits receipt of the notice and does not claim any prejudice as a result of the deviation. *See, e.g. Suarez v. Ingalls*, 282 A.D.2d 599, 600 (2d Dep't 2001) ("Strict compliance with the contract notice provisions was not required because the plaintiff does not claim that she did not receive actual notice or was prejudiced by the deviation.") (citation omitted).[5]  Sesame did not even attempt

---

[5] *Matter of Arbitration between Niagara Frontier Transp. Auth. (Computer Sciences Corp.)*, 209 A.D.2d 1009 (4th Dep't 1994) (refusing to strictly enforce notice provision where party "substantially complied with the contractual notice and claim requirements, and . . . voluminous correspondence, discussions, negotiations, and course of conduct of the parties" established that petitioner "had actual

to identify any prejudice ████████████████████████████████████

███████████████████████████ Nevertheless, the Tribunal incorrectly permitted

██████████████████████████████████████████████

## III.   THE TRIBUNAL IGNORED CLEARLY ON-POINT CASE LAW IN DETERMINING THAT SECTION 10.02(B) WAS UNAMBIGUOUS

Arbitration awards may be vacated where the arbitrators exceeded their powers, "such as where the arbitrators knew of, and yet either refused to apply or ignored, well-defined law that was clearly applicable to the case." *Precision Mech., Inc. v. Karr*, 2005 WL 3277966, at *8 (M.D. Fla. Dec. 2, 2005).

The Award must be vacated because the Tribunal exceeded its powers in ignoring the only on-point New York law presented to it, which it was obligated to follow, and instead impermissibly made up its own law in determining that Section 10.02(b) is unambiguous.  Under New York law, a contractual provision is ambiguous "on its face" when it is "reasonably susceptible of more than one interpretation." *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 573 (N.Y. 1986).[6]

"[I]n deciding whether an agreement is ambiguous, courts 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed.  Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties

---

knowledge"); *Gorey v. Allion Healthcare*, 18 Misc. 3d 1118(A), 17-18 (Sup. Ct. Suffolk Cnty. 2008) (refusing to strictly enforce notice provision where party "was in no way prejudiced" by the deviation).

[6]    *Lockheed Martin v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011) (describing contractual language as ambiguous when it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement").

as manifested thereby.  Form should not prevail over substance and a sensible meaning of words should be sought.'" *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998) (quoting *Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (1927)).[7]

At the Hearing, Sesame failed to establish that its interpretation was the only reasonable interpretation. ██████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████[8]

In the face of extrinsic evidence that overwhelmingly supports SeaWorld's interpretation of Section 10.02(b), the Tribunal nevertheless determined that the provision is unambiguous.  That was an egregious error.  Indeed, New York courts

---

[7]   *SportsChannel Assocs. v. Sterling Mets, L.P.*, 806 N.Y.S.2d 448, 8 Misc.3d 1027(A), at *5 (Sup. Ct. N.Y. Cty. 2005) (granting defendant's summary judgment motion and rejecting plaintiff's interpretation of the ambiguous phrase "Mets Games" to mean all Mets games, including games played after the license agreement was terminated, stating "[w]here a contract's purpose is clear, individual terms are construed so as to harmonize them with that purpose. If necessary, words will be supplied to a contract to clarify its meaning and purpose.") (citations omitted).

[8]   *See, e.g.*, Ex. A 235:9-236:19 (Youngwood).

have found competing interpretations of the term "calendar year" in connection with royalty provisions ambiguous. In *F & M Precise Metals, Inc. v. Goodman*, 8 Misc. 3d 1028(A), 2005 WL 1993493 (Sup. Ct. Nassau Cty. 2005), a plaintiff licensor and defendant licensee entered into a one-year agreement in which plaintiff gave defendant "the exclusive right and license to use" plaintiff's proprietary artwork. *Id.* at *1. Under the agreement, the licensee was obligated to pay a guaranteed minimum royalty to the licensor "[d]uring each calendar year during the Term of this Agreement." *Id.* The term of the agreement commenced on July 1, 2002, such that the one-year term extended over two separate calendar years—July through December 2002, and January through June 2003. The dispute before the Court was whether the licensor was entitled to two guaranteed minimum royalty payments because the term of the agreement extended over two separate calendar years. *Id.* The licensor sued, arguing that the agreement was unambiguous and required the licensee to make two separate payments for each calendar year during which the agreement was effective. The licensee responded by arguing that the contract was ambiguous as to the period(s) during which the licensor was entitled to a guaranteed minimum royalty payment. *Id.*

The court ruled in the licensee's favor and, in finding the agreement ambiguous, the court credited testimony from the licensee that the interpretation advanced by the licensor was "illogical" because (i) the licensee "would not have obligated itself to pay for two years of royalties for a one-year agreement," and (ii) before commencing suit, the licensor had sought a guaranteed minimum royalty

27

payment for a single year. *Id.* at *3. The court concluded that "[t]he inescapable conclusion is that this contract is ambiguous with regard to the period or periods during which [the licensor] is entitled to a guaranteed minimum royalty" and "[e]xtrinsic evidence is needed to establish the intention of the parties." *Id.*

This reasoning applies here and requires the same outcome. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

By ignoring and failing to address the dispositive case directly on point (*F & M*), the Tribunal exceeded its power. The appropriate remedy is vacatur under Section 10(a)(4) of the FAA. *See Precision Mech., Inc.*, 2005 WL 3277966 at *8, *supra*.

## IV. SEAWORLD DEPRIVED OF A FUNDAMENTALLY FAIR HEARING

The Award must be also vacated because the Tribunal (i) "refus[ed] to hear evidence pertinent and material to the controversy" by excluding purportedly privileged evidence pertinent and material to the testimony of its general counsel, thereby permitting Sesame to impermissibly wield the privilege as a sword and a

28

shield; and (ii) refused to permit SeaWorld to cross-examine Sesame witnesses concerning the parties' course of conduct in connection with their interpretation of the exact same royalty provision under nearly identical circumstances. Such antics amount to misconduct and "misbehavior by which the rights of [SeaWorld] have been prejudiced," necessitating vacatur of the Award. 9 U.S.C. § 10(a)(3).

### A.   The Tribunal Deprived SeaWorld of the Opportunity to Meaningfully  Challenge the Testimony of Sesame's General Counsel

The Award must be vacated because the Tribunal permitted Sesame to selectively disclose information and communications it believed helpful to its case while shielding, on purported privilege grounds, information and communications it believed unfavorable to its case. Specifically, the Tribunal permitted Sesame to call Salvo to testify on various topics implicating the attorney-client privilege while allowing Sesame to (i) withhold an unknown number of Salvo's documents on purported privilege grounds and (ii) redact certain of the Salvo documents it chose to produce. Even worse, the Tribunal permitted Sesame to severely limit SeaWorld's ability to assess and probe the veracity of Salvo's testimony by failing to require Sesame to produce a privilege log or redaction log. That prejudiced SeaWorld's ability to assess Salvo's testimony based on a complete evidentiary record, which undermined the integrity of this proceeding, and deprived SeaWorld of the "fundamentally fair hearing" to which it was entitled.

The Tribunal's failure to require Sesame to produce a privilege log is plainly improper and contrary to the requirements imposed on nearly every litigant in every

venue in the United States. *See, e.g.*, CPLR 3122(b) ("[W]here such person withholds one or more documents . . . such person shall give notice to the party seeking the production and inspection of the documents that one or more such documents are being withheld[.]"); Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed[.]").  The Tribunal's failure was particularly prejudicial because Sesame called Salvo as one of its three principal hearing witnesses, even though he had actively participated in this arbitration as counsel, and had attended all depositions and conferences.  In fact, the Tribunal even permitted Salvo to testify concerning such crucial topics as █

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████" Ex. A 88:5-17; 94:3-16; 108:15-17; 115:7-16.  Salvo's knowledge concerning such topics squarely and necessarily implicated attorney-client communications as to which Sesame (i) asserted privilege during discovery and (ii) refused to produce a privilege log. 2/21/23 Pre-Hearing Disclosure of Witnesses and Exhibits. By calling Salvo to testify on such topics, Sesame waived the attorney-client privilege. *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *5 (S.D.N.Y. July 3, 2012) (after MBIA offered its general counsel as a witness at trial, holding that "MBIA, by

placing at issue its contracting intent and interpretation of the Master Agreement, has waived attorney-client privilege.").[9]

By failing to require Sesame to produce a privilege log and, at the same time, permitting Salvo to testify on a host of topics implicating the attorney-client privilege, the Tribunal permitted Sesame to use the attorney-client privilege as both a shield and a sword by selectively disclosing communications it believes are helpful to its case, while shielding, on purported privilege grounds, an unknown number of communications otherwise responsive to SeaWorld's requests.  "A party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir. 2000).[10]

SeaWorld's right to a fair proceeding was prejudiced because it was deprived of the ability to meaningfully challenge the merits of Sesame's privilege assertions, and challenge the assertions made by Salvo during his testimony. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chanda,* 2008 WL 11406040, at *2 (S.D. Fla. Feb. 11, 2008) ("A fundamentally unfair proceeding may result if the arbitrators fail to "give

---

[9] *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248-49 (11th Cir. 2020) ("The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword. Thus, a party waives the attorney-client privilege when that party places privileged information in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.").

[10] *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword."); *Pena v. Handy Wash, Inc.,* 114 F. Supp. 3d 1239, 1245 (S.D. Fla. 2015) (same).

each of the parties to the dispute an adequate opportunity to present its evidence and argument.").[11]

**B.    The Tribunal Failed to Hear Pertinent and Material Evidence Concerning** ███████████████

The Award must be vacated because the Tribunal failed to hear pertinent and material evidence concerning ███████████████



██████████████████████████ The Tribunal, however, precluded SeaWorld from questioning Sesame on the topic.  That deprived SeaWorld of a fundamentally fair hearing, as SeaWorld was unable to present "pertinent and material evidence" concerning the commercially unreasonable nature of Sesame's interpretation of Section 10.02(b).  Courts have vacated awards in strikingly similar circumstances.  *See Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007) (a court may vacate an arbitrator's award "if the arbitrator's refusal to hear

---

[11] *Konkar Mar. Enterprises, S.A. v. Compagnie Belge D'Affretement*, 668 F. Supp. 267, 271 (S.D.N.Y. 1987) (noting that "[p]arties must be allowed to present evidence without unreasonable restriction . . . and must be allowed to confront and cross-examine witnesses" and that "[w]here a party to an arbitration does not receive a full and fair hearing on the merits, a district court will not hesitate to vacate the award."); *Attia v. Audionamix Inc,* 2015 WL 5580501, at *5 (S.D.N.Y. Sept. 21, 2015) ("A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses.").

pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.").[12]

     In issuing the Award in favor of Sesame, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

---

[12] *LJL 33rd Street Assocs., LLC v. Pitcairn Properties Inc.,* 725 F.3d 184, 193 (2d Cir. 2013) ("[a]n arbitrator's unreasonable exclusion of pertinent evidence, which effectively deprives a party of the opportunity to support its contentions, can justify vacating an award."); *Tempo Shain,* 120 F.3d at 20 (vacating award under FAA § 10(a)(3) where the panel excluded evidence plainly "pertinent and material to the controversy" by refusing to hear evidence from the only witness who could contest allegations regarding fraudulent misrepresentations, leaving them unrebutted) (quoting 9 U.S.C. § 10(a)(3)).

Specifically, SeaWorld was prevented from asking Sesame's CEO questions that would establish why Sesame's interpretation of Section 10.02(b), and its insistence on applying that provision to the 2021 Langhorne Park royalty, is commercially unreasonable. The question – ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

The Tribunal also disregarded case law directly on point and dispositive on the core issue of how to interpret Section 10.02(b).  The decision in *Reape v. New York News, Inc.,* 122 A.D.2d 29, 30 (2d Dep't 1986), is instructive. In that case, a newspaper deliveryman asserted a breach of contract claim against a newspaper publisher, claiming that he was entitled to receive 24 cents for each copy of the *Daily News* he delivered to home subscribers rather than 24 cents for the copies delivered

---

[13] *Bensen v. Am. Ultramar Ltd.*, 1997 WL 317343, at *4 (S.D.N.Y. June 12, 1997) (rejecting a plaintiff's "literal interpretation" of his employment agreement to require an amendment to lower his salary as it would produce an "absurd result"); *InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 529–30 (S.D.N.Y. 2005) (confirming an arbitration award which rejected a literal reading of a contract because it would lead to an absurd result by concluding that Sony Ericsson is not a major competitor to Nokia under the contract).

during a six-day period. In rejecting plaintiff's interpretation, the court explained that although "a literal reading of the disputed provision" supported plaintiff's claim, the interpretation would "defeat and contravene the purpose of the agreement." *Id.* at 30. The court stated that "where a particular interpretation would lead to an absurd result, the courts can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties" and "[s]ince the intent of the parties in entering an agreement is a paramount consideration when construing a contract, even the actual words provided therein may be transplanted, supplied or entirely rejected to clarify the meaning of the contract." *Id.* In ruling for defendant, the court emphasized that it "would be unreasonable to conclude that the defendant intended to assume a net loss for each copy delivered by the plaintiff," as would have occurred if plaintiff's interpretation was adopted. *Id.*

Like the interpretation advanced by the plaintiff in *Reape*, Sesame's interpretation should have been rejected as commercially unreasonable. ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. A 133:12-137:21.

## CONCLUSION

For the foregoing reasons, the Award should be vacated.

September 5, 2023

/s/ *Maria H. Ruiz*

Maria H. Ruiz
Florida Bar No. 182923
KASOWITZ BENSON TORRES LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (786) 587-1044
Facsimile: (305) 675-2601
MRuiz@Kasowitz.com

**Attorneys for Respondent**
**SeaWorld Parks & Entertainment, Inc.**